Case No. No. 15-2382
_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JACK REESE, JAMES CICHANOFSKY, ROGER MILLER,
and GEORGE NOWLIN, for themselves and the class

Plaintiffs-Appellees

v.

CNH INDUSTRIAL N.V. and CNH
INDUSTRIAL AMERICA, LLC

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:04-cv-70592
_____

**APPELLEES' RESPONSE TO BRIEF AMICUS CURIAE OF
WHIRLPOOL CORPORATION**
_____

> McKnight, Canzano, Smith,
> Radtke & Brault, P.C.
> By: Darcie R. Brault
> 423 N. Main St., Suite 200
> Royal Oak, MI 48067
> 248-354-9650
> Attorneys for Plaintiffs-Appellee

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.  PROCEDURAL POSTURE ........................................................................1

II. INTRODUCTION .......................................................................................1

III. THE *REESE II* REASONABLENESS INQUIRY AND *TACKETT* ..................................................................................................2

IV. THIS COURT HAS REJECTED THE "CLEAR AND EXPRESS" STANDARD ADVOCATED BY WHIRLPOOL ......................3

V.  ERISA DOES NOT REQUIRE A "CLEAR AND EXPRESS" STANDARD ..............................................................................................5

VI. THE CONTRACTUAL ALLOCATION OF RISK OF HEALTHCARE INFLATION CANNOT BE JUDICIALLY REFORMED BASED UPON SUBSEQUENT CHANGES CONTEMPLATED AS PART OF THE RISK .......................10

# **TABLE OF AUTHORITIES**

**Cases**

*Bidlack v. Wheelabrator, Inc.,* 993 F.3d 603, 609 (7th Cir. 1993) ......................... 12

*Gallo v. Moen, Inc.,* 813 F.3d 265 (6th Cir. 2016) ........................................... 4, 5, 6

*Harper Woods Retirees Ass'n v. City of Harper Woods*, 312 Mich. App. 500, 513, 879 N.W.2d 897, 905 (2015) ..................................................................................2

*Interstate Brands Corp. v. Bakery Drivers, Local Union No. 550*, 167 F.3d 764, 767 (2d Cir. 1999) ..........................................................................................................6

*Karl Wendt Farm Equipment Co. v. International Harvester Co.,* 931 F.3d 1112, 1116 (6th Cir. 1991) ...............................................................................................13

*M & G Polymers USA, LLC v. Tackett,* 524 U.S. \_\_\_, 135 S. Ct. 926, 190 L. Ed. 2d 809 (2015) ....................................................................................................... passim

*Maytag Corp. v. UAW,* 687 F.3d 1076 (8th Cir. 2012) ..............................................1

*Moore v. Metropolitan Life Insurance Co.,* 856 F.2d 488 (2d Cir. 1988) .................5

*Noe v. Polyone Corp.,* 520 F.3d 548 (6th Cir. 2008) ...............................................13

*Reese v. CNH America LLC,* 574 F.3d 315 (6th Cir. 2009) ........................... 5, 6, 11

*Reese v. CNH America LLC,* 694 F. 3d 681 (6th Cir. 2012) ........................ 2, 10, 11

*Tackett v. M & G Polymers USA, LLC,* 811 F.3d 204 (6th Cir. 2016) ............. 3, 4, 5

*United States v. Michigan*, 940 F.2d 143 (6th Cir. 1991) ........................................10

*USW v. Kelsey-Hayes,* Sixth Circuit Court of Appeals, Case No. 13-1717 ............11

*Van Pamel v. TRW Vehicle Safety Sys.,* 723 F.3d 664 (6th Cir. 2013) .....................6

*Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70 (1998) ...............................6

*Zino v. Whirlpool Corp.,* No., 11-CV-1676, 2015 U.S. Dist. LEXIS 147614 (N.D. Ohio Oct. 30, 2015) ...........................................................................................1, 10

*Zino v. Whirlpool Corp.*, No., 11-CV-1676, 2015 U.S. Dist. LEXIS 173484 (N.D. Ohio Dec. 31, 2015)..........................................................................................1

## I. PROCEDURAL POSTURE

Whirlpool Corporation submitted its brief *amicus curiae*, along with a motion for leave to file the brief, on January 20, 2016. Plaintiffs-Appellees opposed the request for leave on February 2, 2016. R. 24 Appellees' Response to Motion of Whirlpool Corporation for Leave to File Brief Amicus Curiae. Oral argument is scheduled for October 19, 2016. Having had no response, Plaintiffs-Appellees submit this responsive brief, to be considered in the event that the panel grants Whirlpool Corporation's request for leave to file its brief *amicus curiae*.

## II. INTRODUCTION

Whirlpool's asserted "interest" in the outcome of this appeal is its exposure to "two different jurisdictions and ... two different vesting standards." R. 18-1, p. 9. Comparing *Zino v. Whirlpool Corp.,* No., 11-CV-1676, 2015 U.S. Dist. LEXIS 147614 (N.D. Ohio Oct. 30, 2015); No., 11-CV-1676, 2015 U.S. Dist. LEXIS 173484 (N.D. Ohio Dec. 31, 2015)[1] to *Maytag Corp. v. UAW,* 687 F.3d 1076 (8th Cir. 2012). Whirlpool advocates for a standard which requires "clear and express" language vesting retiree healthcare benefits.

---

[1] Whirlpool's amicus submission should not be allowed to the extent it is offered as a substitute for the interlocutory appeal denied to Whirlpool Corporation by the district court, in addition to the reasons cited in R. 24, Appellees' Response to Motion of Whirlpool Corporation for Leave to File Brief Amicus Curiae.

The United States Supreme Court and the Sixth Circuit have since resolved this issue. Any such "clear and express" requirement is simply an equal and opposite inference of the type rejected in *M & G Polymers USA, LLC v. Tackett,* 524 U.S. ___, 135 S. Ct. 926, 190 L. Ed. 2d 809 (2015). The Supreme Court rejected **all** "inferences" and directed the courts to "interpret collective-bargaining agreements ... according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *Id.* at 933.

### III.  THE *REESE II* REASONABLENESS INQUIRY AND *TACKETT*

Whirlpool argues that the Court should retain the analysis provided in *Reese v. CNH America LLC,* 694 F. 3d 681 (6th Cir. 2012) (hereinafter "*Reese II*") to determine what vesting "means" if the benefits, here, remain vested on this appeal.

Appellees agree with Whirlpool that the Supreme Court's admonition to return to inference-free, ordinary rules of contract appears to be an implicit rejection of the post-vesting inquiry outlined in *Reese II*. *Tackett* 135 S. Ct. at 935 (2015).[2] Here, however, the District Court applied the *Reese II* analysis and found in favor of the Appellees because, after applying the principles set forth in *Reese II* the District

---

[2] The Michigan State Court of Appeals declined to follow *Reese II* after adopting the reasoning in *Tackett*, implicitly recognizing a conflict. *Harper Woods Retirees Ass'n v. City of Harper Woods*, 312 Mich. App. 500, 513, 879 N.W.2d 897, 905 (2015).

2

Court concluded that the changes CNH proposed were far from "reasonably commensurate" to the current plan.

## IV. THIS COURT HAS REJECTED THE "CLEAR AND EXPRESS" STANDARD ADVOCATED BY WHIRLPOOL

In *Tackett*, the Supreme Court remanded the matter to the Sixth Circuit for further proceedings consistent with its opinion. The Sixth Circuit subsequently issued a decision, remanding the matter to the district court with explicit instructions on the legal principles to be applied on the vesting issue. *Tackett v. M & G Polymers USA, LLC,* 811 F.3d 204 (6th Cir. 2016) (*Tackett III)*.

This Court considered and rejected the invitation to adopt an "explicit language" requirement in favor of companies:

> Importantly, the Court rejected *Yard-Man's* inferences in favor of retirees, but also declined to adopt an "explicit language" requirement in favor of companies. See *M&G Polymers*, 135 S. Ct. at 937 (unanimous op.), 938 (Ginsburg, J., concurring); *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 207, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991) ("[A] collective-bargaining agreement [may] provide[] in explicit terms that certain benefits continue after the agreement's expiration," but nevertheless, "constraints upon the employer after the expiration date of a collective-bargaining agreement . . . may arise as well from the express or implied terms of the expired agreement itself.") (emphasis added). Thus, while the Supreme Court's decision prevents us from presuming that "absent specific durational language referring to retiree benefits themselves, a general durational clause says nothing about the vesting of retiree benefits," we also cannot presume that the absence of such specific language, by itself, evidences an intent not to vest benefits or that a general durational clause says everything about the intent to vest. See *M&G Polymers*, 135 S. Ct. at 935, 937 (unanimous op.)

*Id.* at 206 (6th Cir. 2016)(footnote omitted).

3

This Court explicitly held:

> **No rule requires "clear and express" language** in order to show that parties intended health-care benefits to vest.

*Id.* at 209 (emphasis added).

This Court remanded the matter:

> ... so the district court can decide, among other things, outside the "shadow of *Yard-Man*," (1) what documents make up the parties' Agreements; (2) whether reference to extrinsic evidence is appropriate; and (3) whether the Agreements, and any extrinsic evidence that may be considered, vests with Retirees lifetime contribution-free health care benefits. The district court should use ordinary principles of contract law to answer these questions, **without a "thumb on the scale" in favor of either party**.

*Id.* at 210 (emphasis added).

Next, this Court, in *Gallo v. Moen, Inc.,* 813 F.3d 265 (6th Cir. 2016) confirmed:

> Moen argues that *Tackett* creates a clear-statement rule—that, before a retiree may impose a duty on a company to provide vested and unalterable healthcare benefits, it must satisfy the rigors of clarity associated with waivers of sovereign immunity and the like. See *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992). But clear-statement rules of this sort generally come into play after courts deploy the customary rules of interpretation. See *id.* at 34-37; *Gregory v. Ashcroft*, 501 U.S. 452, 464-67, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991); *Dellmuth v. Muth*, 491 U.S. 223, 227-32, 109 S. Ct. 2397, 105 L. Ed. 2d 181 (1989). Only at that point do courts ask whether the parties or the legislature, as the case may be, has clearly/expressly/plainly created the duty at issue and only at that point do they establish a default rule in favor of or against certain outcomes or policies. *Tackett* does not create such a rule. ... In overruling *Yard-Man*, in short, *Tackett* does not create a clear-statement rule in the other direction. It instead eliminates the use of inferences and implications not grounded in "ordinary principles of contract law" and explains the kinds of tools properly deployed in this setting.

4

*Id.* at 274.

There can be no doubt, after *Gallo*, that there is no requirement of "clear and express" language to vest retiree healthcare benefits, post-*Tackett.*

## V. ERISA DOES NOT REQUIRE A "CLEAR AND EXPRESS" STANDARD

Whirlpool argues that "ERISA Public Policy" requires a "clear and express standard" for finding retiree healthcare benefits are vested. However, the "rights" afforded employers who have voluntarily undertaken to provide unilaterally modifiable benefits to its employees under ERISA are not the same as those of an employer that binds itself during a contract negotiation to provide vested benefits in exchange for other consideration, including potential concessions, from the other party. *Tackett III*, 811 F.3d at 209.[3]

*Tackett* directs the courts to analyze the parties' contract in the ordinary way, not as Whirlpool urges, through a selective lens of ERISA public policy. Indeed, in *Reese v. CNH America LLC,* 574 F.3d 315 (6th Cir. 2009) (*Reese I*), this Court cited to *Moore v. Metropolitan Life Insurance Co.,* 856 F.2d 488 (2d Cir. 1988), in recognition of the primacy of the contract. This Court stated, after noting Congress' decision not to *require* vesting of healthcare benefits under ERISA, "[t]he matter,

---

[3] As argued in Appellees' principal brief, the significance of ERISA and the Supreme Court's reference to *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) is overstated by both CNH and now Whirlpool.

5

then, was left to employers, employees and unions to handle by contract." *Reese I,* 574 F.3d at 327.

Whirlpool also argues that the employer's ability to modify, alter or terminate welfare benefits is an interest "protected by federal public policy" which can only be waived through a clear and express waiver, relying upon the *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70 (1998) line of cases.[4] Whirlpool's argument was rejected in *Gallo*. As Judge Sutton wrote for this Court: "*Tackett* does not create such a rule." *Gallo,* 813 F.3d at 274.

However, there is another point that can be made by Whirlpool's invocation of ERISA: Whirlpool highlights that **at least as early as ERISA's adoption in 1974, it was well known that the costs of healthcare plans fluctuated unpredictably, including through inflation, changes in technology, etc.** If Congress was sufficiently apprised of the nature of the risks of vesting these benefits as early as 1974, then surely the UAW and CNH's predecessors understood those risks as they

---

[4] These cases are inapposite: "*Wright's* 'clear and unmistakable' standard is based upon a concern about allowing a union to waive an individual employee's statutory rights -- i.e., a concern about the waiver of one's rights by someone else. Where, however, one waives one's own rights, the 'clear and unmistakable' standard is not required." *Interstate Brands Corp. v. Bakery Drivers, Local Union No. 550*, 167 F.3d 764, 767 (2d Cir. 1999). *See also, Van Pamel v. TRW Vehicle Safety Sys.,* 723 F.3d 664, 669 (6th Cir. 2013) (clear and unmistakable waiver not required for arbitration of retirees' ERISA rights because of their genesis in contract).

willingly entered into a series of contracts providing for vested retiree healthcare benefits.

Beginning in 1971, CNH and the UAW agreed to company-paid retiree healthcare benefits. The language used in the 1971 contract was that the retiree and surviving spouse "shall be eligible" for healthcare benefits. After the contract was signed, CNH sent a letter to the retirees stating that they agreed to provide fully paid benefits at age 65 for them and for their surviving spouse:

> Here are the details of the Group Medical Insurance you are eligible for January 1, 1972, as a J I Case Retiree or the Surviving Spouse of a Retiree.
>
> We have put the information in a question-and-answer format believing this to be most understandable and anticipating the questions most of you have in mind. Because this letter contains considerable important information, please read it carefully and keep it for future reference.
>
> ... WHO IS ELIGIBLE TO ENROLL?
> Retired employees receiving a J I Case Pension and Surviving Spouses receiving a Spouse's Pension are eligible. However, everyone age 65 or older <u>must</u> be enrolled for Medicare.
>
> WILL A PREMIUM BE REQUIRED?
> a)  Age 65 or older
>
> Retirees and Surviving Spouses, age 65 or older, are not required to pay a premium, either for themselves or any eligible dependent. Instead, the coverage shall be fully paid by the Company.
>
> ...
>
> WILL MY SPOUSE BE ABLE TO KEEP THIS COVERAGE IF I PASS AWAY?

> If you have elected the Spouse's Optional Form of Pension and your spouse will receive a pension as a result, your spouse will be able to keep this coverage for the rest of her lifetime. ...

Devine Letter, R. 129-14:6089-92.

When benefits were paid to surviving spouses, they received a form letter from Mr. Devine advising of the monthly pension amount "payable to you for the remainder of your lifetime" and stating, "[y]ou may keep the Group Medical Coverage which at age 65 becomes free of cost." Devine Letter, R.129-14;6100.

There can be no question that the parties intended the contract language to mean the retirees and their spouses would receive lifetime benefits. This is the understanding the parties repeatedly brought to the bargaining table.

In 1974, the year ERISA was enacted, CNH agreed, beginning January 1, 1975, to pay the full cost of healthcare benefits for all retirees and eligible surviving spouses, regardless of age. 1974 Plan, R.129-26:6710-11. Subsequently, almost identical language was used to promise lifetime retiree healthcare benefits for each new[5] group of retirees in each subsequent contract. 1983 Plan, R.129-29:5519-22; 1990 Plan, R. 129-30:5030-33; 1995 Plan, R. 129-31:6295-98.

During the decades leading up to the 1994 and 1998 contract negotiations, there were many instances in which CNH acknowledged that it intended to provide

---

[5] These agreements did not reach back to include previous groups of retirees as CNH sometimes implies. Each contract covered all of the retirees, retiring under that contract.

8

lifetime retiree healthcare benefits to the retirees, regardless of the escalating costs of that healthcare. See Appellees' Brief, p. 26-38. However, the most telling example of the parties' mutual acknowledgement that the risk of healthcare inflation was shouldered by CNH is the FAS 106 accounting problem and its ultimate solution. In 1993, the UAW and CNH negotiated the FAS 106 Letter with a future per person "cap" on CNH's obligation for retiree healthcare. If, as CNH and now Whirlpool, contend, the parties meant for the retiree healthcare obligation to expire at the end of the contracts, then there would have been no need to implement a cap.

The caps would not become effective until after the contract expired. In late 1997, there was a dispute over whether the caps *would* become effective. As a result, in 1998, the UAW demanded and CNH agreed to eliminate the caps on its *future, post*-CBA obligation for retiree healthcare. This is a clear acknowledgment of CNH's obligation to provide the contractual benefits which were unlimited in duration and cost.

As Whirlpool points out, in 1974 when ERISA was enacted, the costs of retiree healthcare benefit plans were fluctuating and unstable. Nonetheless between 1971 and 1998, CNH repeatedly promised and have continuously paid lifetime benefits despite that fluctuation. CNH even agreed to add benefits, e.g. vision and dental. CNH did not attempt to eliminate or reduce its obligations until this litigation.

It would blink reality to pretend, now, that CNH did not understand the consequences of its actions when it agreed to provide the benefits for life. It would also obstruct the ultimate goal of contract interpretation: To determine the intent of the parties when they made their promises. *Tackett* 135 at 935.

## VI. THE CONTRACTUAL ALLOCATION OF RISK OF HEALTHCARE INFLATION CANNOT BE JUDICIALLY REFORMED BASED UPON SUBSEQUENT CHANGES CONTEMPLATED AS PART OF THE RISK

The importance of healthcare inflation is not, as Whirlpool advocates, a reason to apply new rules that relieve employers from their obligations. Rather, healthcare inflation should be analyzed in the context of the parties' understanding of which party bears the risks of future cost increases under their contract. This court should not reform the contract to change that risk allocation.

Whirlpool's argument also suffers procedural defects: First, Whirlpool improperly expands the issues before the Court. See *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) ("[A]micus cannot create, extend, or enlarge issue[s].") Rather than focusing on the facts of this particular contract, or even contracts at all, Whirlpool focuses on portions of the report of a proposed expert, Hall,[6] whom it retained in the *Zino* matter.

---

[6] This section of Whirlpool's brief is confusing because it takes themes from *Reese v. CNH America LLC,* 694 F.3d 681 (6th Cir. 2012) ("*Reese II*") about what might constitute a reasonable change to vested benefits and grafts those arguments into the analysis of whether the benefits are vested, e.g. *Reese v. CNH America LLC,* 574

10

Second, the Hall report should be struck as it suffers from many of the same defects suffered by those submitted by CNH in district court: Bias,[7] failure to be qualified as an expert, a lack of explication for the scientific, technical or other specialized knowledge Hall possesses or what reliable methods or principles he applied to reach his conclusions. See R.428; 5764-5779, Plaintiffs' Motion to Strike CNH's Expert Declarations.[8]

Substantively, Whirlpool's attempted submission of "expert" reports is an invitation to this Court to make policy determinations about the "ever-changing

---

F.3d 315 6th Cir. 2009) ("*Reese I*"). Hall's testimony was offered, apparently, to prove that the retiree medical benefits Whirlpool sought to impose were as generous or more generous than benefits provided "roughly three quarters of all larger employers." This information was presumably proffered at the district court level in support of Whirlpool's assertion that even if the court found the class benefits vested, that it should allow modification under *Reese II*.

[7] Whirlpool, along with CNH and Borg Warner have submitted briefs *amicus curiae* in other retiree healthcare cases. The ERISA Industry Committee ("ERIC"), also sought leave to file an *amicus curiae* in that case, contending that it supports "neither party." *USW v. Kelsey-Hayes,* Case No. 13-1717 (Doc. 62-63, 66-67, 69, 71). There is nothing neutral that ties this group together. This web of supportive *amicus* is part of a strategy to change the law to benefit Whirlpool, CNH and others who have incurred or inherited retiree healthcare obligations and cannot otherwise un-vest those benefits.

[8] CNH's proposed expert witness (Scott Macey) was the President of ERIC, see footnote, above: "The Only National Association Advocating Solely for the Employee Benefit and Compensation Interests of America's Largest Employers" http://www.eric.org/. ERIC has articles available on its website, including "*Supreme Court Strikes Down Yard-Man and the 6th Circuit Court's Stranglehold on Retiree Health Benefits*" and provides links to its various *amici* briefs.

nature of healthcare" and whether any entity is "serve[d]" when parties "fix retiree healthcare benefits at the time of retirement." R. 18-1, p. 14-15. Whirlpool suggests that because healthcare benefits are "constantly in flux" that employers should not make promises to provide them, or if they do, that the courts should not require them to keep those promises.[9]

However, the law allows parties to make contracts for vested benefits, even when those benefits increase in cost and value. Five years before the 1998 CBA at issue here, the Seventh Circuit stated, in *Bidlack v. Wheelabrator, Inc.,* 993 F.3d 603, 609 (7th Cir. 1993), that employers, "not anticipating the recent rise in health costs, should not expect the courts to bail them out by ondoing the contractually determined allocation of risk on the question." *Accord Noe v. Polyone Corp.,* 520

---

[9] The result of not adopting a "flexibility" rule, Whirlpool argues, is that retirees would be "denied access to state-of-the-art treatments and employers would be unable to take advantage of more cost-effective healthcare solutions." R.18-1;16. Under the instant contract facts, Whirlpool's statements are simply **false**. There is no diminution in the kind of treatments retirees receive, over time, under the Current Plan. Like most health benefit plans, the benefit descriptions are sufficiently flexible to include new treatments. This flexibility is contractual. And employers have opportunities to reduce their costs without requiring retirees to share in those costs. *See e.g., National and State Health Care Initiatives Letter of Understanding* (which allows changes to take advantage of government programs so long as there is no additional cost to retirees). R.425:14969-70. CNH also, as a current employer, has market power to contract and modify contracts with insurance plans to reduce its costs that retirees do not have. A determination that the benefits are not vested would bring the very danger Whirlpool warns of for retirees, and worse: denial of treatment and benefits, altogether. Without vesting, the "cost-saving" that the employer can achieve is that it can (and will) simply terminate the plan.

F.3d 548, 564 (6th Cir. 2008) ("it is not the prerogative of the judiciary to rewrite contracts in order to rescue parties from 'their improvident commitments.'") The fundamental role of a court is to enforce a contract. Subsequent events that merely render performance more expensive, but not impossible, do not relieve a party of contractual obligations. *See Karl Wendt Farm Equipment Co. v. International Harvester Co.,* 931 F.3d 1112, 1116 (6th Cir. 1991).

In this case, reforming the 1998 CBA to reallocate the risk of medical inflation would negate the actual intent of the parties when they reached that agreement. As stated above, the parties were well aware of the growing costs of retiree healthcare benefits when they were bargaining, including in 1998. It was in 1998 that the UAW demanded, and CNH agreed, that it retract its "Cap Letter" which would have shifted the burden of the growing costs of retiree healthcare benefits to the retirees on a date intentionally set beyond the expiration of the expiring contract. This contract fact, one among many, unequivocally demonstrates that the parties intended the burden of healthcare inflation to rest fully with CNH going forward.

                                              Respectfully submitted,

                                              s/Darcie R. Brault
                                              Darcie R. Brault
                                              McKnight, Canzano, Smith,
                                              Radtke & Brault, P.C.
                                              423 N. Main St. Ste. 200
                                              Royal Oak, MI 48067
                                              248-354-9650

September 20, 2016                   Attorneys for Plaintiffs-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2016, I caused the foregoing Appellees' Response to Whirlpool Corporation's Brief Amicus Curiae to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of interest participating in the CM/ECF system.

s/Darcie R. Brault
Darcie R. Brault
McKnight, Canzano, Smith,
Radtke & Brault, P.C.
Attorneys for Plaintiffs-Appellee
423 N. Main St. Ste. 200
Royal Oak, MI 48067
248-354-9650

September 20, 2016